H. C. BOLL, Appellant, v. EDITH M. CAMP, et al, AND H. C. BOLL, Appellant, v. CRESTON GOLD MINING Co., et al.

Action to Recover Dividends: SALE OF CORPORATE STOCK: FACTS CONSTITUTING SAME. Where the owner of a share of stock in a mining company sold a half interest on certain conditions, which were complied with, and thereafter refused to pay further assessments and authorized the delivery of the certificate to the purchaser of said half interest on condition she pay the assessments then due, and to become due, which she did, full title to the certificate passed to such purchaser, and the seller can recover no dividends on such stock.

Same: INCREASED ASSESSMENTS: SALE OF STOCK: ESTOPPEL. Where a stockholder assents to the increase of assessments, pays the amount then due, accepts his certificate and authorizes the sale of his stock for subsequent assessments, he is estopped to deny the validity of the assessments or sale of the stock for the amount of the assessment.

*Appeal from Union District Court.*—HON. W. H. TEDFORD, Judge.

THURSDAY, DECEMBER 18, 1902.

THESE actions are both in equity, and were brought to recover dividends paid on two certificates of stock in a mining company now known as the "Creston Gold Mining Company." In the action first entitled the plaintiff claims to be the owner of a one-half interest in the certificate for one share of stock, and concedes that Miss Camp owns the remaining interest, while Miss Camp claims to own the entire share of stock by purchase from the plaintiff. In the second case the plaintiff claims to be the absolute owner of a certificate which was formerly owned by one Edgerton, but which was surrendered by Edgerton, and afterwards taken by the plaintiff from the mining company. P. C. Winter, one of the defendants, claims the

ownership of this certificate by purchase at a forfeiture sale thereof by said mining company on the 11th day of April, 1898. A general history of the organization and transactions of this mining company, together with a statement of facts occurring before and after the forfeiture sale under which Winter claims to own the last-mentioned certificate, are given in the case of *Joseph v. Davenport*, 116 Iowa, 268, and will not be repeated here. Both cases were dismissed by the trial court, and the plaintiff appeals. They were submitted together here.—*Affirmed.*

*J. G. Bull, Temple & Hardinger* and *Stuart & Stuart* for appellant.

*T. L. Maxwell* and *D. W. Higbee* for appellees.

SHERWIN, J.—The plaintiff associated himself with the other persons interested in the mining company early in its history by becoming the owner of a certificate for one

1. SALE of corporate stock: facts constituting same.

share of its stock, payments or assessments upon which were to be monthly, at the rate of $10. After he had paid $95 in assessments on this share of stock, he made a written assignment of a one-half interest therein to the defendant Edith M. Camp upon condition that she should pay the future assessments thereon until they aggregated the amount which he had then paid, and thereafter pay one-half of such assessments. Prior to the payment of the January 1898, assessment; which was $30, she had paid assessments aggregating in amount about $88, and in paying this assessment she paid the amount necessary to equal the plaintiff's previous payments thereon and one-half of the balance of the assessment, and the plaintiff paid his share thereof, so that, after the payment of this January assessment, she and the plaintiff were each bound to pay one-half of the future assessments. The February, 1898, an assessment of $25 was

paid in equal shares by the plaintiff and the defendant Camp. The March assessment was $20, and, when called upon for his share thereof, the plaintiff absolutely refused to pay it, or to put any more money into the venture. He positively so stated to both Winter and Bilbo, and specifically authorized and directed them to deliver to Miss Camp the certificate owned jointly by her and himself, on condition that she pay the then due and future assessments thereon. She accepted his proposition, and did pay that and future assessments, relying upon the sale to her of his one-half interest in the stock, and not until a year and a half after the transaction did she have an intimation that the plaintiff still claimed to own an interest therein.

The facts which we have recited we find fully established by the evidence, and we conclude that there was a fully completed sale of this plaintiff's remaining interest in the share of stock for a full consideration, paid in strict conformity to the condition of the transfer. Whether this or other assessments were legal or illegal does not enter into this transaction. The plaintiff had the undoubted right to treat his interest in this particular share of stock as he pleased, and, having made a voluntary sale and delivery of it, it passed the full title to the defendant Camp, and she was and is entitled to all dividends paid, or which shall be paid thereon.

II. The share of stock involved in the second of these cases was sold at the same sale, under the same 2. SAME: in-creased as-sessments: sale of stocks: estoppel. process as to forfeiture, and for the same reason, that the stock was sold in the *Joseph v. Davenport Case*, and is governed thereby. *Joseph v. Davenport*, 116 Iowa, 268.

In the instant case, however, it satisfactorily appears that the plaintiff, when called upon for the April assessment on this share of stock; not only refused to pay it, but, when told that it would either have to be paid, or a forfeiture of the share would follow, said to Winter, Bilbo,

and Camp that they could sell it, and that he would sur-
render the certificate to them for that purpose.   It appears
in this case that the plaintiff had paid the increased assess-
ments, without objection thereto, until these actions were
commenced; and, not only this, but when the action was
taken authorizing the larger assessments, Edgerton, the
then owner of the stock, was present, and assented thereto.
The plaintiff afterwards took this certificate from the
company without other consideration than the payment of
an assessment of $25, then due, and with full knowledge
of the action of the company, and of the great increase in
the monthly calls, and he is now estopped on this question.
There is no evidence of fraud in either of these cases, but
it is overwhelmingly shown that the venture was without
prospect of reward, even up to the 1st of June, 1898, and
that the plaintiff and other shareholders had abandoned
all hope of realizing fortunes from the "Jack Pot Mine."

Both cases are AFFIRMED.